LOUELLA DONALSON,

*vs.*

INVESTORS REALTY CORPORATION, a corporation of the State of Delaware, MARK TEMPLE DOWLING and METROPOLITAN REALTY, INC., a corporation of the State of Delaware.

*New Castle, Dec. 21, 1927.*

*Aaron Finger* and *Percy Warren Green*, for complainant.

*James H. Hughes, Jr.*, of the firm of Ward and Gray, for defendant, Metropolitan Realty, Inc.

THE CHANCELLOR. The substance of the bill is as follows: Investors Realty Corporation is alleged to have possessed assets of between $45,000 and $48,000, which consisted practically of one mortgage owned by it. Dowling secured stock control of the corporation by purchasing from its officers and directors individually 2,000 shares of its common stock for $6,000 plus 180 shares of common stock of Metropolitan Realty, Inc., and 3,700 shares of its common stock out of its unissued shares at ten cents a share, the purchase from the directors and officers being conditioned on their sale to him of enough common stock to insure him control of the corporation, a condition which the sale of the 3,700 shares satisfied. Another requirement which Dowling exacted as a condition to his purchase was that the corporation should dispose of its assets so that upon his coming into control the only asset should be cash in hand. The assets were turned into cash and the stock control acquired by Dowling. Upon his securing such control all but one of the officers and directors resigned and their places were filled at the dictation of Dowling by persons chosen by him. The one exception was Dr. Willard Springer, the president who was to continue temporarily as president and director until a decision should be made in a short time as to who should take his place. What the new officers did is charged to have been done by them under the dictation, domination and control of said Dowling, who himself however, though the controlling stockholder, was not an officer or director. The following transactions were under Dowling's direction entered into by the corporation:

(1) The corporation bought 200 units of stock of the defendant Metropolitan Realty, Inc., for $130 per unit, paying out of its treasury $26,000 therefor (each unit consisting of two shares of preferred stock, par $50 per share, and one share of common stock without par value).

(2) The corporation loaned $9,000 to said Metropolitan Realty, Inc., secured by 100 shares of preferred and 100 shares of common stock of Puritan Mortgage Corporation, of which corporation the complainant is unable to secure any information except that it is one of several corporations with which said Dowling and his associates are connected.

(3) The corporation loaned $10,000 to a certain J. Russell Coutts on his promissory note indorsed by said Dowling and secured by 2,000 shares of said Metropolitan Realty, Inc., common stock.

With respect to transaction No. 1, the bill charges that at the time when it was entered into, Dowling was in complete management and control of the Metropolitan Realty, Inc., being a director thereof and chairman of its executive committee, and further that he either directly or through one of his numerous corporations received a so-called commission of $5,000 out of said $26,000, and that there was and is no market for the stock of said Metropolitan Realty, Inc.

With respect to transaction No. 2 the bill charges that the loan to Metropolitan Realty, Inc., was made on a ninety day note for $9,000, dated May 14, 1926, bearing interest at six per cent., that said note was not paid at maturity, no interest has been paid thereon and no action taken to collect either principal or interest.

With respect to transaction No. 3, the bill charges, on information and belief, that Coutts is a "straw" man for Dowling, that the latter in reality got the money and that the collateral, viz., the Puritan Mortgage Corporation's stock, was and is worthless; that the loan was supposed to be represented by a promissory note of said Coutts, dated May 7, 1926, payable in ninety days with interest at six per cent., and that nothing has been paid on account of principal or interest, nor has any attempt been made to collect the same.

The bill further alleges that since said transactions were completed the corporation has ceased to function and that the only discoverable activity in its affairs has been an effort to arrange for Dr. Springer, the president, to call a meeting of directors at which the associates of Dowling could have their resignations as officers and directors accepted.

The gravamen of the bill is that fraud was at the bottom of the three transactions complained about and that as a consequence they should be set aside and the *status quo ante* restored. The suit, being one filed by the complainant in her derivative right as a stockholder, alleges a grievance belonging to the corporation and is of course to be tested by the corporation's right to relief as if it were, instead of the complainant, the party complaining.

The demurrant objects first that the Investors Realty Corporation so far as the bill shows, has a complete remedy at law. This ground does not appear to be well taken. There is no procedure known to the law by which cancellation of the three several transactions specifically complained against and a restoration of the parties thereto to the *status quo ante* could be secured.

It is further objected that the bill in its allegations of fraud lacks that particularity of specification which is necessary in order for a case of fraud to be shown. In the main, the allegations of fraud consist merely of the statement that the transactions described by the bill were improper, in lack of good faith and in fraud of the corporation. The mere characterization of a transaction as fraudulent does not make it so. Facts must be set forth from which the court can see that a reasonable predicate exists upon which to base the characterization. *O'Neill v. E. I. Du Pont, etc., Co.*, 12 *Del. Ch.* 76, 106 *A.* 54. "Mere adjectives of fraud cannot supply the place of the averment of facts constituting the fraud." *Rice v. Wilson, et al.*, (*D. C.*) 225 *F.* 159. With this general principle in mind, I now turn to the allegations touching each of the three transactions complained against to see if there is enough of specification of facts to support the general characterization of fraud which the bill attaches to them.

First then as to the transaction by which Investors Realty, Inc., purchased 200 units of stock of the Metropolitan Realty, Inc., a concern of which Dowling is alleged to have been in complete management and control. From whom this stock was purchased, however, the bill fails to show. Whether it was purchased from Metropolitan Realty, Inc., from Dowling, or from some other person is not stated. If the stock was purchased from some person other than the defendants Dowling or Metropolitan Realty, Inc., while Dowling might be a proper party to the litiga-

tion because of his alleged participation in the transaction, the Metropolitan Company, the demurrant, could not be concerned with it. Furthermore, the unnamed seller would be an indispensable party to the suit, for the remedy of cancellation could not be granted in his absence as a party. If the fraud consisted in paying out $26,000 for a worthless or grossly overvalued stock, the bill fails to show it. It does allege that the stock pays no dividend and has no market. But whether it has value, or if so how much, is not stated. A stock may not be paying dividends and may have no ready market and yet be of value. If Dowling got a commission on the sale, even though the transaction was with an outsider, I suppose he would be accountable therefor to the Investors Realty, Inc., for the bill shows that the purchase was made by the latter when he was its dominant stockholder and in control of the board of directors, nominated and directed by himself. But the bill is not framed as one which seeks an accounting for secret profits. If it were, a demurrer on the merits would be overruled. Being a bill for cancellation, however, it should be sustained.

The second transaction concerns a loan of $9,000 to Metropolitan Realty, Inc., upon its note secured by 100 shares of stock of Puritan Mortgage Company as collateral. All that is alleged concerning this item of grievance is that neither the note nor interest has been paid, that no action has been taken to collect the same and that the complainant is unable to obtain information concerning the Puritan Mortgage Company beyond the fact that Dowling and his associates are connected with it. There is no allegation to the effect that the note with its collateral is worthless and was known by Dowling to be such. The fact that neither principal nor interest has been paid is not inconsistent with good faith in the negotiation of the loan. Nor does the fact that the complainant is unable to obtain information regarding the Puritan Mortgage Company, stock of which is pledged as collateral, contain any arguable imputation of fraud. That Dowling and his associates are in some unspecified manner connected with the Puritan Mortgage Company is a fact which is alleged on information and belief. But that the connection is such as to read fraud into the transaction does not appear.

The third transaction concerns the loan to one Coutts who is

alleged to have been a straw man for Dowling. There has been only one appearance to the bill, that of Metropolitan Realty, Inc., the demurrant. It is in no wise concerned in the Coutts transaction and can in no wise be interested in the relief, if any, which might be granted with respect to that transaction. Whether, on the merits, the bill shows a good case with respect to the Coutts matter, it would seem is a question touching which the particular corporation which has demurred on grounds going to the merits, can have no interest entitling it to be heard. A demurring defendant cannot object to an alleged defect in a bill in a particular which in no wise concerns or affects the case made against him and which however disposed of can do him no injury or prejudice. 21 *C. J.* 431.

For the reasons above stated the demurrer of Metropolitan Realty, Inc., will be sustained. Let an order be entered accordingly.